IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KRISTINA LEE STRUBLE BRUSH, § <br> and VERNON BRUSH, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> § <br> WELLS FARGO BANK, N.A., § <br> § <br> Defendant. § | CIVIL ACTION NO. H-10-5016 |

**MEMORANDUM AND OPINION**

This case arises out of a dispute between Kristina Lee Struble Brush and Wells Fargo Bank, N.A. over a mortgage loan that Mrs. Brush's father, Ronald James Struble, used to purchase a home. Mrs. Brush and her husband, Vernon Brush, moved into the home to help care for Struble, who was ill. Shortly before his death, Struble fell behind on his loan payments. The Brushes allege that when Struble died, they informed Wells Fargo, the mortgage holder. They allege that they provided documents showing that Mrs. Brush had inherited the home. The Brushes allege that Wells Fargo agreed to modify the mortgage loan but then attempted to foreclose, breaching the agreement.

In their amended complaint, the Brushes asserted claims against Wells Fargo for: (1) breach of contract; (2) detrimental reliance; (3) negligence; (4) breach of the duty of good faith and fair dealing; (5) violations of the Texas Debt Collection Act (TDCA); (6) violations of the Texas Deceptive Trade Practices Act (TDPA); (7) violations of the federal Fair Debt Collection Practices Act (FDCPA); and (8) declaratory and injunctive relief. (Docket Entry No. 22). Wells Fargo moved for summary judgment on all claims, (Docket Entry No. 23), and for judgment on the pleadings

under Federal Rule of Civil Procedure 12(c), (Docket Entry No. 64). In a November 29, 2012 memorandum and opinion, this court granted summary judgment on all of the Brushes' claims except for Mrs. Brush's claim that Wells Fargo breached the August 2010 loan modification agreement and the Brushes' claims under the Texas Debt Collection Act (TDCA), TEX. FIN. CODE § 392.301(a)(8), that Wells Fargo "threaten[ed] to take an action prohibited by law" by failing to send Mrs. Brush written notices of default and acceleration before beginning the foreclosure process.

Wells Fargo ask this court to reconsider its denial of summary judgment on the Brushes' remaining claims. (Docket Entry No. 74). Alternatively, Wells Fargo moves for leave to file additional counterclaims and affirmative defenses, (Docket Entry Nos. 76, 88), and to take the plaintiffs' depositions, (Docket Entry No. 77).

Based on the pleadings; the motions, responses, and replies; the record; the arguments of counsel; and the relevant law, the court orders as follows:

- Wells Fargo's motion for reconsideration is denied;
- Wells Fargo's motion for leave to file additional counterclaims and affirmative defenses is denied;
- Wells Fargo's supplemental motion for leave to file additional counterclaims and affirmative defenses is denied;
- Wells Fargo's motion for leave to take the plaintiffs' depositions is denied.

The reasons for these rulings are explained below.

**I.     The Motion for Reconsideration**

    **A.     The Legal Standard**

The Federal Rules of Civil Procedure do not specifically provide for motions for new trial

when, as here, no trial has occurred. Nor do the rules provide for a motion for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Motions asking a court to reconsider a judgment or order are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order or when the motion seeks reconsideration of an interlocutory order. *Steadfast Ins. Co. v. SMX 98, Inc.*, 2009 WL 3190452, at *4–5 (S.D. Tex. Sept. 28, 2009) (drawing the line at 10 days instead of 28 days because the case was decided before the amendments to Rule 59 took effect on December 1, 2009). Wells Fargo's motion is appropriately considered under Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*,

367 F.3d at 479; *see also* 11 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1, at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**B. Analysis**

Wells Fargo contends that, because it and Struble were the only parties to the note and deed of trust, Mrs. Brush was not entitled to assume and modify Struble's home loan. Wells Fargo's motion for reconsideration does not contest this court's findings that, under Texas law, Struble's interest in his property passed to his daughter when he died and that, under federal law, Wells Fargo was prohibited from exercising the "due on sale clause" in Struble's note, *see* 12 U.S.C. § 1701j-3(d) & (d)(5) ("[A] lender may not exercise its option pursuant to a due-on-sale clause upon . . . a transfer to a relative resulting from the death of a borrower."). Instead, Wells Fargo argues that Mrs. Brush was not an authorized representative of Struble's estate and was not entitled to modify Struble's home loan on his behalf without Struble's permission.

Under Texas law, it appears that Mrs. Brush's assumption of Struble's mortgage would be effective if she promised to pay Struble's mortgage obligation. According to *Restatement (Third) of Property (Mortgage)* § 5.1(a), an "assumption of liability" means "a promise by the transferee of mortgaged real estate, *whether made to the transferor or to the mortgagee*, to perform the obligation secured by the mortgage." (emphasis added); *see also Burlington State Bank v. Tucker*, 76 S.W.2d 811, 814 (Tex. Civ. App.—Austin 1934, writ refused) ("Her father's obligation would not under said statute become her personal obligation; but she could, for the protection of her inheritance, validly assume it . . . .").

4

Wells Fargo cites several cases stating that every party to a contract must agree to modify that contract. *See, e.g.*, *Powell v. Thompson*, 112 S.W.2d 173, 176 (Tex. 1938); *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986). Those decisions — which do not involve mortgage assumptions — are inapplicable here because Mrs. Brush's assumption of her father's mortgage was not a modification of Wells Fargo's prior agreements with him. As Wells Fargo notes, a transferee's agreement to assume a loan is a new promise and does not necessarily extinguish the transferor's personal obligation under the loan. *See* RESTATEMENT (THIRD) OF PROPERTY (MORTGAGE) § 5.1(b)(2) ("When mortgaged real estate is transferred with assumption of liability . . . the transferor remains personally liable for the covenants in the mortgage and for the obligation secured by the mortgage, to the extent such liability existed prior to the transfer."); *Shockey v. Page*, 354 S.W.2d 698, 700 (Tex. Civ. App.—Eastland 1962, writ ref'd n.r.e.) (holding that an original obligor is personally liable if there is "no unconditional acceptance of [the assuming party] as the sole principal obligor by the holder of the indebtedness nor was there any agreement to release the original obligors."); *Helge v. Am. Cent. Life Ins. Co.*, 124 S.W.2d 191, 193 (Tex. Civ. App.—Austin 1938, writ dism'd) (holding that, even after a debt has been assumed, a creditor can look to "the maker, for the collection of its note, and the enforcement of its lien upon [the assuming party's] failure to pay."). Struble was not a necessary party to the August 2010 agreement between Mrs. Brush and Wells Fargo because that agreement's terms were controlling only as to Mrs. Brush's obligations to Wells Fargo.

Wells Fargo also argues that the August 2010 Agreement cannot "be read as an assumption agreement under which Mrs. Brush became obligated under Mr. Struble's Note and Deed of Trust." (Docket Entry No. 74 at 7). Wells Fargo contends that "there is no evidence to support the

5

conclusion [that] the August 2010 Loan Modification was intended to be an assumption agreement at the time it was signed." (*Id*. at 8).

"The purchaser of property subject to a mortgage may, by the use of particular language, evidence an intention to become personally liable for the mortgage debt." *Vaughn v. SecurityNational Mortg. Co.*, 2012 WL 3016859, at *3 (citing *Fid. Union Fire Ins. Co. v. Cain*, 28 S.W.2d 833, 836 (Tex. Civ. App.—Dallas 1930, no writ.)). This language need not be in the form of an assumption agreement to be effective. "A deed may contain a clause that the land is purchased subject to the lien indebtedness, [or] by the use of other language in the deed may evidence an intention on the part of the purchaser to become personally liable for such indebtedness." *Cain*, 28 S.W.2d at 836; *see also Vaughn*, 2012 WL 3016859, at *3. The August 2010 Agreement that Mrs. Brush signed stated: "I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Interest . . . ." (Docket Entry No. 37-3, Ex. 39, § 3). If Mrs. Brush is able to show at trial that she was a party to the loan-modification agreement, this language clearly indicates her intent personally to assume the mortgage.

Wells Fargo points to extrinsic evidence in the record that it asserts shows that, contrary to the Agreement's language, Mrs. Brush never intended to assume Struble's loan obligation. After Wells Fargo indicated that it would not honor the August 2010 Agreement, Mrs. Brush filed an application with Wells Fargo's assumption department.

Only if a contract is first determined to be ambiguous may a court admit extraneous evidence to determine the meaning of the instrument, *see R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc*., 596 S.W.2d 517, 518 (Tex. 1980); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc*., 907 S.W.2d 517, 520 (Tex. 1995). If a written contract can be given a definite or certain legal

6

meaning, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). Parol evidence is not admissible to create an ambiguity. *See Universal*, 243 S.W.2d at 157; *Lewis v. East Texas Finance Co.*, 146 S.W.2d 977, 980 (1941). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *See Coker*, 650 S.W.2d at 394; *R & P Enterprises*, 596 S.W.2d at 518.

This court previously held that the presence of Mrs. Brush's signature at the bottom of the August 2010 Agreement, the body of which named others as parties, made the contract ambiguous as to whether the parties intended Mrs. Brush to be bound by it. But Wells Fargo does not identify a reason why the assumption language is ambiguous.

Wells Fargo argues that it is clear from the face of the August 2010 Agreement it was "an attempted modification agreement between Wells Fargo and Mr. Struble." (Docket Entry No. 74 at 3). Wells Fargo points out that the Agreement's language suggests that it is between Wells Fargo and the "borrower" and that Mr. Struble — and not Mrs. Brush — is identified as the "borrower." But Wells Fargo does not challenge this court's statement in its November 29, 2012 memorandum and opinion that "[t]he majority of courts in other states that have considered similar issues have held that a mismatch between a signatory and a person named in the instrument may give rise to an ambiguity that justifies the use of extrinsic evidence." (Docket Entry No. 74 at 23). And, as this court noted, "[t]here is considerable evidence in the record supporting the Brushes' allegations that Wells Fargo was aware of Struble's death." (*Id*. at 26). The record is replete with evidence that Wells Fargo promptly knew that Struble had died:

> The Brushes sent Wells Fargo several handwritten notes beginning
> in 2009 stating that Struble had died and that they intended to make

>loan payments. The Brushes sent Wells Fargo the death certificate and the Small Estate Affidavit and court order approving the Affidavit to show that Mrs. Brush had inherited the property. Wells Fargo spoke to the Brushes by telephone regarding the loan on multiple occasions. Wells Fargo requested the Brushes' financial information. The October 2009 HAMP TPP document that Wells Fargo received included the Brushes' signatures. Mrs. Brush made several loan payments in her own name. Wells Fargo's internal records include an entry stating "MORTGAGER DECEASED." Wells Fargo ordered a title search that showed Struble had died. The record also reflects that Wells Fargo signed the August 2010 Loan Modification Agreement after Mrs. Brush signed. When Hamilo Y. Adem, Wells Fargo's Vice-President of Loan Documentation, executed the Agreement, Mrs. Brush had already signed her name in the neighboring signature line on the same page.

(*Id.*). Based on the relevant case law and the record, the court declines to alter its prior finding that there is a genuine factual dispute material to determining whether Mrs. Brush is a party to the August 2010 Agreement.

## II. The Motion for Leave to File an Amended Answer, Counterclaims, and Affirmative Defenses

Wells Fargo moves for leave to amend its answer to assert counterclaims for breach of contract, fraud, fraudulent inducement, negligent misrepresentation, and civil conspiracy; additional affirmative defenses of offset, recoupment, fraud, fraudulent inducement, and negligent misrepresentation; a claim for attorneys' fees and costs under § 38.001 of the Texas Civil Practice & Remedies Code, the deed of trust, and the TDCA; and a claim for exemplary damages under § 41.008 of the Texas Civil Practice & Remedies Code. (Docket Entry Nos. 77, 78, 88, 88-1).[1]

---

[1] Well's Fargo's original proposed amended answer, counterclaims, and affirmative defenses includes a request for a declaratory judgment that if Mrs. Brush prevails on her breach-of-contract claim based on the August 2010 Loan Modification, Mrs. Brush is personally bound under Struble's Note and Deed of Trust; the amount that she owes to Wells Fargo; and whether the Note and Deed of Trust are in default. (Docket Entry No. 78). The proposed amended answer, counterclaims, and affirmative defenses that Wells Fargo submitted with its amended motion for leave to file an amended answer does not include a request for a declaratory judgment. Wells Fargo has also not sought leave to file declaratory-judgment

### A. The Legal Standard for Granting Leave to Amend

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir.2005) (internal quotation marks omitted). Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted). Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc*., 625 F.3d 262, 270 (5th Cir. 2010). A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility. *Id.* (internal quotation marks omitted).

The scheduling order governing this case set July 1, 2011 as the deadline for amending pleadings. When amending the pleadings would, in effect, require amendment of the scheduling order, both Rule 15 and Federal Rule of Civil Procedure 16 apply. Rule 16(b) states that scheduling orders "may be modified only for good cause and with the judge's consent." The "good cause" standard, rather than the "freely given" standard of Rule 15(a), governs a motion to amend which is filed after the deadline set in the scheduling order. *See Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546–47 (5th Cir.2003); *see also Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340

---

counterclaims in either its original or supplemental motions for leave to amend.

(2d Cir. 2000).  Courts consider four factors in deciding whether there is good cause to amend a scheduling order: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003).  A district court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quotations omitted).

In responding to a pleading, a party must "state in short and plain terms its defenses to each claim asserted against it."  FED. R. CIV. P. 8(b)(1)(A).  Counterclaims and affirmative defense are subject to the same pleading requirements as the complaint.  *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  In *Woodfield*, a 1999 case, the Fifth Circuit held that a defendant sufficiently pleaded an affirmative defense by providing enough specificity or factual particularity to give the plaintiff "fair notice."  193 F.3d at 362.  *Woodfield*'s fair-notice pleading requirement is met if the defendant "sufficiently articulated the defense so that the plaintiff was not a victim of unfair surprise."  *Id.*  A court makes this determination through a fact-specific analysis.  *Id.*

Since *Woodfield*, the Supreme Court has clarified the pleading requirements for a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007).  Under *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting *Twombly*, 550 U.S. at 555).

10

District courts within the Fifth Circuit have divided as to whether *Woodfield*'s fair-notice standard continues to apply to pleading affirmative defenses and counterclaims, or whether *Twombly* and *Iqbal*'s plausibility standard applies. *Compare, e.g.*, *Vargas v. HWC Gen. Maintenance, LLC*, 2012 WL 948892, at *2 (S.D. Tex. Mar. 20, 2012) (holding that *Twombly* and *Iqbal*'s plausibility standard applies); with *Floridia v. DLT 3 Girls, Inc*., 2012 WL 1565533, at *2 (S.D. Tex. May 2, 2012) (holding that *Woodfield*'s fair-notice standard continues to apply). The Fifth Circuit has not addressed this issue. Because the determination of whether to grant Wells Fargo's motions for leave to amend their pleadings does not turn on whether Wells Fargo's putative affirmative defenses satisfy the applicable pleading standards, this court need not resolve these issues here.

**B.     Analysis**

        **1.     The Proposed Breach-of-Contract Counterclaim and Affirmative Defenses of Offset and Recoupment**

Wells Fargo proposes to add allegations that even if the August 2010 Agreement was valid between it and Mrs. Brush, Mrs. Brush breached the agreement by failing to make her first payment. (Docket Entry No. 88-1, ¶¶ 28, 30). Wells Fargo proposes allegations that it fulfilled its obligation under the mortgage documents and Texas law to provide default notices and an opportunity to cure by addressing these notices to Struble. (Docket Entry No. 88-1, ¶¶ 33, 34).

Wells Fargo has not shown good cause for amending the scheduling order to assert a breach-of-contract claim. Wells Fargo previously moved for leave to assert a nearly identical breach-of-contract claim against the Brushes. (Docket Entry No. 31). On May 11, 2012, this court denied Wells Fargo's motion on the basis that it had not provided a satisfactory explanation for not moving for leave to amend earlier. (Docket Entry No. 42). As this court explained then, Wells Fargo has been aware since this litigation began that the Brushes were alleging that the loan-modification

11

agreement was a valid contract between Mrs. Brush and Wells Fargo and that Mrs. Brush's first payment was returned NSF.

Wells Fargo contends that it could not have earlier asserted a contract claim based on the original contract because it did not have sufficient notice that Mrs. Brush believed she had assumed Struble's mortgage. But the proposed amended complaint that Wells Fargo filed with the April 5, 2012 motion for leave to file an amended answer shows that Wells Fargo then sought to hold the Brushes personally liable for Struble's mortgage debt:

> As a proximate cause of Counter-Defendants' breach, Wells Fargo has suffered damages. Wells Fargo seeks recovery of the unpaid balance of the Note, together with interest at the contract rate, prejudgment and post-judgment interest, costs, expenses and reasonable attorney's fees. Additionally or alternatively, Wells Fargo seeks foreclosure of its lien as evidence by the Deed of Trust in the Property to satisfy the amounts due and owing from Counter-Defendants.

(Docket Entry No. 31-2, ¶ 124). Wells Fargo has not shown good cause why this court should reconsider its prior denial of the request to assert a breach-of-contract claim.

Wells Fargo also seeks to assert the affirmative defenses of offset and recoupment on the basis that if Mrs. Brush shows that she assumed Struble's loan obligation, it follows that she is liable on Struble's note. "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted). "Like a setoff, recoupment permits a creditor that owes a debt to the debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor. But the right of recoupment, unlike the right to setoff, exists only where the two debts arise out of the same transaction." *In re Anes*, 195 F.3d 177, 182 (3rd Cir. 1999) (citations omitted). Wells Fargo's

proposed offset and recoupment defenses flow from the same set of facts as its proposed counterclaim. Wells Fargo's request to amend the scheduling order to assert the affirmative defenses of offset and recoupment are denied for the reasons stated above.

### 2. The Proposed Counterclaims for Fraud, Fraudulent Inducement, Negligent Misrepresentation and Civil Conspiracy

Wells Fargo alleges that Mr. Brush committed fraud, fraudulent inducement, and negligent misrepresentation by stating in a June 1, 2010 telephone call to Wells Fargo that he was "Ronald James Struble" in order to gain access to Struble's mortgage account and to get Wells Fargo to send loan modification documents. (Docket Entry No. 88-1, ¶ 36). Wells Fargo also alleges that Mr. and Mrs. Brush "conspired to mislead and misrepresent the status of Ronald James Brush, by conspiring to have Vernon Brush call Wells Fargo's representative and impersonate the borrower, Ronald James Struble." (Docket Entry No. 88-1, ¶ 40).

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). A contract is subject to avoidance on the ground that it was induced by fraud. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex.2011); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998) ("As a rule, a party is not bound by a contract procured by fraud.").

Civil conspiracy is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall*, 925

S.W.2d 672, 681 (Tex. 1996). Wells Fargo's claim of conspiracy to commit fraud is derivative of the fraud claims. *Highland Crusader Offshore Partners, LP v. LifeCare Holdings Inc.*, 311 F. App'x 422, 428 (5th Cir. 2010) (citing *Tilton v. Marshall*, 925 at 681). Fraud counterclaims must comply with the particularity requirements of Rule 9(b). *See Castillo v. Hernandez*, 2011 WL 2489910, 3 (W.D. Tex. June 17, 2011) (applying Rule 9(b) to a fraud counterclaim).

Wells Fargo has not shown good cause for amending the scheduling order to assert fraud, fraudulent inducement, and negligent misrepresentation counterclaims. Wells Fargo alleges in its proposed counterclaim that it "relied on [Mr. Brush's statement on the phone that he was Struble] and sent loan modification packets addressed to Ronald James Struble to the Property address." (Docket Entry No. 88-1, ¶ 38). But Wells Fargo has not sufficiently alleged that it actually and justifiably relied on Mr. Brush's representation that he was Struble to its detriment or that, if it did so rely, that its reliance was reasonable under the circumstances. *See American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) ("Just as with affirmative misrepresentations, the allegedly defrauded party must have reasonably relied on the silence to his detriment. Likewise, negligent misrepresentation claims require reasonable reliance on the representation."). The overwhelming and uncontradicted evidence currently in the record shows that the Brushes repeatedly informed Wells Fargo of Struble's death, their intention to make payments on Struble's mortgage, and their desire to modify Struble's loan obligation. This suggests that Wells Fargo's counsel might not be able to allege that Wells Fargo reasonably relied on Mr. Brush's comment to a Wells Fargo representative that he was Struble and still meet his obligations under Federal Rule of Civil Procedure 11.

Wells Fargo has also not explained its failure to move earlier for leave to amend to add the

14

proposed counterclaims. Wells Fargo's proposed misrepresentation claims are based on recordings of communications with the Brushes. Presumably Wells Fargo had these since the beginning of this litigation.

Permitting Wells Fargo to amend to assert misrepresentation counterclaims would prejudice the Brushes and unduly delay the resolution of this case. It appears that Wells Fargo's recordings of its conversations with the Brushes were not provided to them during discovery. If this court were to permit Wells Fargo to assert belatedly fraud counterclaims based on this information, the Brushes would be entitled to seek additional information regarding Wells Fargo's recordings, the extent to which it relied on those recordings, and the reasonableness of any reliance. This court declines to reopen discovery in a case that is more than two years old and only weeks away from trial. Wells Fargo's request to amend the scheduling order to assert counterclaims for fraud, fraudulent inducement, and negligent misrepresentation is denied.

This court also declines Wells Fargo's request to amend its complaint to seek exemplary damages. Exemplary damages may be awarded for fraud, malice, or gross negligence if the claimant's evidence of fraud is clear and convincing. TEX. CIV. PRAC. & REM. CODE § 41.003. "[E]vidence of simple negligence is not evidence of gross negligence," and cannot support an exemplary-damages award. *Exxon Mobil Corp. v. Altimore*, 256 S.W.3d 415, 425 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Because this court has denied Wells Fargo's request for leave to amend the scheduling order to assert counterclaims for fraud, fraudulent inducement, negligent misrepresentation, and civil conspiracy, Wells Fargo lacks a basis for obtaining exemplary damages.

### 3. Attorney's Fees and Costs

Wells Fargo seeks attorney's fees under the deed of trust, the TDCA, and § 38.001 of the Texas Civil Practice and Remedies Code. Attorney's fees are generally treated as special damages and must be specifically pleaded under Federal Rule of Civil Procedure 9(g). *See United Industries, Inc. v. Simon–Hartley, Ltd.*, 91 F.3d 762, 764 (5th Cir. 1996); *In re IFS Fin. Corp.*, 2010 WL 1992579, at *3 (S.D. Tex. May 18, 2010).

Wells Fargo has not shown good cause for amending the scheduling order to request attorney's fees. It was aware from the beginning of this litigation that the Brushes were alleging that they were parties to the note and deed of trust and were asserting claims under the TDCA. Wells Fargo also lacks a legal basis for asserting attorney's fees under § 38.001 of the Texas Civil Practice and Remedies Code. Section 38.001 permits parties that succeed on breach-of-contract claims to seek attorneys' fees. This court has twice denied Wells Fargo's motions to amend the scheduling order to assert breach-of-contract counterclaims against the Brushes. Because Wells Fargo has not asserted a breach-of-contract counterclaim against the Brushes, it may not recover attorneys' fees under § 38.001.

Wells Fargo's motion for leave to amend its complaint to request attorneys' fees is denied.

## III.    The Motion for Leave to Take the Plaintiffs' Depositions

Wells Fargo requests leaves to depose the plaintiffs. As Wells Fargo acknowledges, it previously deposed Mr. and Mrs. Brush for three hours each. Wells Fargo states, however, that it requires additional information about: Mrs. Brush's alleged assumption of Struble's debt and the Brushes' communications with Wells Fargo relevant to the Brushes' TDCA claims.

Federal Rule of Civil Procedure 30(a)(2)(A)(ii) provides that a "party must obtain leave of court" if the individual that party seeks to depose "has already been deposed in the case." Courts

16

evaluate whether to grant leave to redepose a witness according to the considerations stated in Rule 26(b)(2).  FED. R. CIV. P. 30(a)(2)(A).  Those considerations include limiting discovery when: (1) "the discovery is unreasonably cumulative or duplicative," FED. R. CIV. P. 26(b)(2)(i); (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," FED. R. CIV. P. 26(b)(2)(ii); or (3) "the burden or expense of the proposed discovery outweighs its likely benefits," FED. R. CIV. P. 26(b)(2)(iii).  Because Wells Fargo seeks to redepose the Brushes outside the discovery deadline, this court also looks to Federal Rule of Civil Procedure 16(b).

Wells Fargo has not shown good cause under Rules 26(b)(2) and 16(b) for redeposing the plaintiffs.  It has been on notice of the plaintiffs' TDCA claims since the first amended complaint was filed on July 1, 2011.  Wells Fargo deposed Mr. and Mrs. Brush well after that date and had the opportunity to ask both plaintiffs about the basis for their claims under the TDCA.

As evidenced by its April 5, 2012 motion for leave to amend to assert a breach-of-contract counterclaim, Wells Fargo has also long been aware that if Mrs. Brush proved that she was a party to the August 2010 Agreement, she would be personally liable for Struble's mortgage debt. Wells Fargo has not shown that deposing the plaintiffs on Mrs. Brush's alleged assumption of Struble's mortgage loan is reasonably calculated to produce relevant evidence.  The assumption language in the August 2010 Agreement is unambiguous.  Extrinsic inconsistent evidence would be inadmissible at trial.  And permitting Wells Fargo to depose Mr. and Mrs. Brush risks delaying the trial, which is scheduled to begin in several weeks.

Wells Fargo's request to redepose Mr. and Mrs. Brush is denied.

**IV.    Conclusion**

For the reasons stated above, this court orders that:

17

- Wells Fargo's motion for reconsideration is denied;

- Wells Fargo's motion for leave to file additional counterclaims and affirmative defenses is denied;

- Wells Fargo's supplemental motion for leave to file additional counterclaims and affirmative defenses is denied;

- Wells Fargo's motion for leave to take the plaintiffs' depositions is denied.

SIGNED on February 27, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge